UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BERTRAND TOULOUSE                                                   Case No.:

                                  Plaintiff,

                                                               **COMPLAINT**

                                                               **PLAINTIFF DEMANDS**
                          -against-                               **A TRIAL BY JURY**

VILLAGE DIAGNOSTIC TREATMENT CENTER,
*dba* VILLAGE CARE HEALTH CENTER
and BETH ISRAEL MOUNT SINAI HOSPITAL


                                              Defendant(s).
-------------------------------------------------------------------X

Plaintiff, BERTRAND TOULOUSE, (hereinafter "Plaintiff"), by his attorneys, LAW OFFICE OF JULIO E. PORTILLA, P.C., as and for his verified complaint, alleges upon information and belief, as follows:

## NATURE OF CASE

1.  Plaintiff complains pursuant to 28 U.S.C. 1331 (federal question); the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); Title VII of the Civil Rights Act of 1964, as codified; 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, pub. L. No. 102-66 ("Title VII"); Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213 (2000).and the New York City Human Rights Law, Administrative Code §8-107 et seq. ("NYCHRL"), seeking to recover lost wages, emotional distress, punitive damages, reasonable attorneys' fees, and costs as a result of Defendants' violations, discriminatory actions and retaliation against Plaintiff as set forth herein.

**JURISDICTION AND VENUE**

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. 1331 (federal question), and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Defendants also violated Plaintiff's privacy rights under color of state law pursuant to 42 U.S.C. 1983, pursuant to which Plaintiff has a federal cause of action.

3. Venue is proper under 28 U.S.C. § 1391 because the events giving rise to Plaintiff's claims occurred within the State of New York in the confines of this District.

**PARTIES**

4. That, at all times mentioned herein, BERTRAND TOULOUSE, (hereinafter "Plaintiff") is a resident of the State and County of New York.

5. That Plaintiff, at all relevant times herein, is a Registered Nurse ("RN") and employee of VILLAGE DIAGNOSTIC TREATMENT CENTER *dba* VILLAGECARE HEALTH CENTER which maintains an office at 121a West 20th Street, New York, NY 10011.

6. That, at all times herein, VILLAGE DIAGNOSTIC TREATMENT CENTER *dba* VILLAGECARE HEALTH CENTER (hereinafter referred to as "VILLAGE DIAGNOSTIC") is a domestic corporation, duly organized and existing under and by virtue of the laws of the State of New York.

7. That VILLAGE DIAGNOSTIC is a not-for-profit organization organized and existing under the laws of the State of New York with its principal place of business located at 121a West 20th Street, New York, NY 10011.

8. That, at all times herein, BETH ISRAEL MOUNT SINAI HOSPITAL (hereinafter referred to as "BETH ISRAEL MOUNT SINAI") is a non-for profit hospital in the city and state of New York which. That upon information and belief Mount Sinai Hospital and

Beth Israel merged to form BETH ISRAEL Mount Sinai HOSPITAL and as such said entity has assumed each and every liability of Mount Sinai Hospital by operation of said merger. Mount Sinai Hospital, Beth Israel and Beth Israel Mount Sinai Hospital are hereinafter collectively and individually referred to as BETH ISRAEL Mount Sinai HOSPITAL.

9. That, at all times mentioned herein, BETH ISRAEL MOUNT SINAI, its servants, employees, agents, and associates held itself out to the general public, as a community based not-for-profit organization serving people with chronic care needs, as well as seniors and individuals in need of continuing care and rehabilitation services.

10. At all times mentioned herein, Defendants VILLAGE DIAGNOSTIC and BETH ISRAEL MOUNT SINAI are collectively referred to herein as the "Defendants".

## MATERIAL FACTS

11. In or about 2008, Plaintiff began working for VILLAGE DIAGNOSTIC as a Registered Nurse ("RN").

12. At the time and during the period in question, Plaintiff accrued over four (4) years of professional experience as an RN, and even earned a Bachelor of Science degree in Nursing.

13. In or around April of 2013, Plaintiff was transferred from the VILLAGE CARE A.I.D.S. Day Treatment Program where he served as a Clinical Coordinator to the Village Health Care Center and thereafter promoted to serve as a Registered Nurse Manager.

14. As a Registered Nurse Manager, Plaintiff's professional duties and benefits, included but were not limited to the following:

a. VILLAGE DIAGNOSTIC was responsible for providing Plaintiff with coverage under the VILLAGE DIAGNOSTIC group medical, dental and long-term disability plans as a contributory;

b. VILLAGE DIAGNOSTIC was responsible for providing Plaintiff with access to a life insurance policy equal to twice his annual salary not to exceed $250,000.00, with the option of buying additional life insurance at minimal cost;

c. VILLAGE DIAGNOSTIC was responsible for providing Plaintiff with a flexible spending account program for both medical and dependent care, allowing Plaintiff to put aside pre-tax dollars for personal medical and/or dependent childcare costs.

d. VILLAGE DIAGNOSTIC was responsible for providing Plaintiff with three paid (3) personal days and paid birthdays.

15. After six (6) months of employment, Plaintiff was also eligible for the following benefits:

a. Tuition reimbursement of up to two thousand dollars ($2,000.00) per semester, not to exceed four thousand ($4,000.00) per year.

b. Four (4) weeks' vacation

c. In addition to four (4) weeks' vacation Plaintiff was entitled to nine (9) paid holidays, and twelve (12) sick days annually.

16. As consideration for Plaintiff's performance of his duties as Registered Nurse Manager, Plaintiff was to receive an annual salary of $87,500.00, payable on a bi-weekly basis, every other Wednesday.

17. In consideration of the promises made by VILLAGE DIAGNOSTIC, and in reliance on those promises, Plaintiff accepted his promotion at VILLAGE DIAGNOSTIC as a Registered Nurse Manager.

18. Prior to the incident in question, Plaintiff performed his job in a satisfactory manner. As the Nurse Manager at VILLAGE DIAGNOSTIC, Plaintiff received positive reviews, commendations for his work, and overall praise from management.

19. On or about December 11, 2013, Plaintiff suffered a medical emergency while working at VILLAGE DIAGNOSTIC, which led him to be admitted to BETH ISRAEL MOUNT

SINAI. During the Plaintiff's E.R. evaluation at BETH ISRAEL MOUNT SINAI he was treated by Dr. Kourosh Kahkeshani and other resident physicians.

20. While the Plaintiff was being treated, Dr. John Dellosso, the Medical Director for VILLAGE DIAGNOSTIC ("Dellosso") attempted to obtain information about the Plaintiff's medical condition from Dr. Kourosh Kahkeshani and other resident physicians present. The Plaintiff expressly denied this request.

21. As a result, Dr. Dellosso then contacted Dr. Riperpart, a hematologist for BETH ISRAEL MOUNT SINAI, to discover further details of Plaintiff's medical condition. At the time, Dr. Riperpart was not treating the Plaintiff. Upon information and belief Dr. Riperpart is Dr. Dellosso's friend and colleague.

22. Upon information and belief, Dr. Riperpart retrieved Plaintiff's medical records and discussed Plaintiff's medical condition and other private health information with Dr. Dellosso. These conversations and exchanges occurred without Plaintiff's knowledge or consent.

23. Moreover, the conversation between Dr. Dellosso and Dr. Riperpart regarding Plaintiff's medical condition were not in furtherance of any course of treatment or related to any payment or reimbursement purpose.

24. The aforesaid unauthorized disclosure of Plaintiff's private and protected medical information was not related to any health care purpose as defined under the "Privacy Rule" 45 C.F.R. § 164.502(a) since Dr. Dellosso and Dr. Riperpart were not Plaintiff's treating physicians and/or health care providers.

25. At all times relevant herein, Dr. Dellosso and Riperpart did not maintain a physician-patient relationship with the Plaintiff. As previously stated, Dr. Dellosso was merely an employee of Plaintiff's employer and Dr. Ripepart was a friend and colleague of Dr. Dellosso

5

attempting to do Dr. Dellosso a favor in unlawfully disclosing Plaintiff's confidential medical information.

26. Furthermore, on or about December 12, 2013, Denise Despridel-Quail, ("Denise") the Health Center Administrator, by mass e-mail informed all staff employed at VILLAGE DIAGNOSTIC (the "Health Center", "HELP Program", and "Care Coordination Program") of Plaintiff's admission to BETH ISRAEL MOUNT SINAI. Plaintiff never consented to the issuance of this mass email.

27. On or about December 23, 2013, Plaintiff was cleared by his doctor to return to work full-time without medical related restrictions.

28. On or about December 23, 2013, Plaintiff filed a complaint with the U.S. Department of Health and Human Services ("HHS"), Office for Civil Rights ("OCR") alleging violations of HIPAA.

29. On or about December 26, 2013, Plaintiff contacted, Suzanne Haber, ("Haber"), the Corporate Compliance Officer at Village Care of New York to inform her that he filed a complaint with the U.S. Department of Health & Human Services to address HIPAA violations in connection with Dellosso's conversation with Dr. Riperpart and Denise's mass email discussing his medical condition.

30. On or about December 26, 2013, Haber acknowledged receipt of Plaintiff's complaint and informed the Plaintiff that an internal investigation will be conducted.

31. On or about December 31, 2013, Haber informed the Plaintiff that his HIPAA allegations were unsubstantiated and closed the investigation.

32. Upon information and belief, and subsequent to the aforementioned complaint and investigation, VILLAGE DIAGNOSTIC took whatever steps necessary to terminate the Plaintiff intentionally and improperly. These steps included but are not limited to the following:

    a. Plaintiff was spoken to in an unprofessional manner by his superiors in the presence of co-workers and patients;

    b. Plaintiff's colleagues were specifically directed to find cause to terminate Plaintiff's position, even if such information was ultimately fabricated;

    c. Plaintiff's direct supervisor began to treat Plaintiff in a hostile and disrespectful manner compared to her treatment of Plaintiff prior to Plaintiff's filing of the OCR complaint.

33. Upon information and belief, VILLAGE DIAGNOSTIC'S actions were in retaliation for Plaintiff's HIPAA complaint.

34. As a result of VILLAGE DIAGNOSTIC'S unwarranted retaliatory behavior Plaintiff was subjected to undue stress and anxiety.

35. On or about January 16, 2014, VILLAGE DIAGNOSTIC informed the Plaintiff that he was terminated effective immediately.

36. Upon information and belief, Plaintiff's termination was in retaliation of his HIPAA complaint because the reasons offered by VILLAGE DIAGNOSTIC for Plaintiff's termination were false and pretextual and the hostile work environment coincided with Plaintiff's filing of a HIPAA complaint.

37. As a result of the hostile work environment and retaliatory efforts on the part of VILLAGE DIAGNOSTIC, Plaintiff felt offended, disturbed, stigmatized, humiliated and discriminated against.

38. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer loss of income, loss of salary, loss of bonuses, loss of benefits, and other compensation, which his employment entailed. Plaintiff has also suffered future pecuniary loss, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

39. Plaintiff further experienced severe emotional and physical distress as a result of the aforesaid conduct.

40. As a result of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdiction of the Court to be determined at trial.

41. Upon information and belief, Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law and consequences stemming therefrom. As such, Plaintiff demands punitive damages as against the Defendants jointly and severally.

### AS AND FOR A FIRST CAUSE OF ACTION FOR DISCRIMNATION UNDER TITLE VII

42. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer:  "(1) to …discriminate against any of his employees … because [s]he has opposed any practice, made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

43. VILLAGE DIAGNOSTIC engaged in unlawful employment practices specifically prohibited by 42 U.S.C. § 2000e-3(a) by discriminating against Plaintiff with respect to the terms, conditions, or privileges of employment specifically because of his opposition to the unlawful employment practices engaged by the Defendant.

44. Upon information and belief, once the Plaintiff filed his HIPAA complaint, VILLAGE DIAGNOSTIC took whatever steps necessary to terminate the Plaintiff intentionally and improperly.  These steps included but are not limited to the following:

   a. Plaintiff was spoken to in an unprofessional manner by his superiors in the presence of co-workers and patients;

   b. Plaintiff's colleagues were specifically directed to find cause to terminate Plaintiff's position, even if such information was ultimately fabricated;

   c. Plaintiff's direct supervisor began to treat Plaintiff in a hostile and disrespectful manner compared to her treatment of Plaintiff prior to Plaintiff's filing of the OCR complaint.

45. VILLAGE DIAGNOSTIC's actions were in retaliation for Plaintiff's HIPAA complaint, and such unwarranted retaliatory behavior created undue stress and anxiety for Plaintiff.

46. As a result of the foregoing the Plaintiff has been damaged in a sum to be determined at trial but believed to exceed the jurisdictional threshold of this Court.

### AS A SECOND CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINSITRATIVE CODE

47. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth at length herein.

48.     The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

49.     Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code Title 8, §8-107(6) by aiding, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

50.     As a result of the foregoing the Plaintiff has been damaged in a sum to be determined at trial but believed to exceed the jurisdictional threshold of this Court.

**AS A THIRD CAUSE OF ACTION FOR**
**DISCRIMINATION UNDER THE**
**NEW YORK CITY ADMINSITRATIVE CODE**

51.     Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth at length herein.

52.     The New York City Administrative Code Title 8, §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter…"

53.     Once Plaintiff asserted his rights under HIPAA, VILLAGE DIAGNOSTIC took whatever steps necessary to terminate the Plaintiff intentionally and improperly.  These steps included but are not limited to the following:

   a. Plaintiff was spoken to unprofessionally by his superiors in the presence of co-workers and patients; and

   b. Plaintiff's colleagues were being directed to find cause to terminate Plaintiff's position even if it had to be fabricated;

      c. Plaintiff's direct supervisor began to treat him in a manner different from how she had prior to the filing of the OCR complaint, in that she ceased speaking to Plaintiff in a personal manner, was short and abrupt, and rarely made eye contact.

54. VILLAGE DIAGNOSTIC's actions were in retaliation for Plaintiff's HIPAA complaint, and such unwarranted retaliatory behavior created undue stress and anxiety for Plaintiff.

55. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

56. As a result of the foregoing the Plaintiff has been damaged in a sum to be determined at trial but believed to exceed the jurisdictional threshold of this Court.

## AS A FOURTH CAUSE OF ACTION
## FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINSITRATIVE CODE

57. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth at length herein.

58. New York City Administrative Code Title 8, §8-107(19) states: "Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section".

59. Defendants violated the New York City Administrative Code Title 8, §8-107(19) by engaging in the conduct as aforesaid.

60. As a result of the foregoing the Plaintiff has been damaged in a sum to be determined at trial but believed to exceed the jurisdictional threshold of this Court.

### AS A FIFTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### THE NEW YORK CITY ADMINSITRATIVE CODE

61. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth at length herein.

62. New York City Administrative Code Title 8, §8-107(13) states:

a. An employer shall be liable for unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

c. The employee or agent exercised managerial or supervisory responsibility; or

d. The employer knew of the employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

e. The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

63. Defendants engaged in an unlawful discriminatory practice in violation of the New York City Administrative Code Title 8, §8-107(13) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

64. As a result of the foregoing the Plaintiff has been damaged in a sum to be determined at trial but believed to exceed the jurisdictional threshold of this Court.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR
## VIOLATION OF THE AMERICAN WITH DISABILITIES ACT (ADA)

65. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth at length herein.

66. The A.D.A. requires that an employee's medical information be kept from the employee's supervisors, other than as is necessary to disclose job restrictions or accommodations. *See In Fitch v. Continental Casualty Co.*, 2002 U.S. Dist. LEXIS 24269 (N.D. Ill., Dec 16, 2002); also see e.g., Brian K. Powell & Richard A. Bales, HIPAA as a Political Football and its Impact on Informal Discovery in Employment Law Litigation, 111 Penn. St. L. Rec. 137 (2006).

67. While the Plaintiff was being treated at BETH ISRAEL MOUNT SINAI, Dr. John Dellosso, the Medical Director for VILLAGE DIAGNOSTIC ("Dellosso"), contacted a Dr. Riperpart, a hematology physician for BETH ISRAEL MOUNT SINAI.  Dellosso is Plaintiff's employer and not his treating physician.  Nonetheless, Dellosso wanted further details of Plaintiff's medical condition, and as result, he contacted Dr. Riperpart, who upon information and belief, is a friend and colleague of Dr. Dellosso.

68. Upon information and belief, Dr. Riperpart retrieved Plaintiff's medical records and discussed said records and the private information contained therein, with Dr. Dellosso. This conversation between Dr. Dellosso and Dr. Riperpart occurred without Plaintiff's consent.

69. Moreover, the conversation between Dr. Dellosso and Dr. Riperpart regarding Plaintiff's medical condition were not for treatment or even billing purposes.  Specifically, the disclosure of Plaintiff's protected medical information was not for healthcare related reasons as defined in the Privacy Rule at 45 C.F.R. § 164.502(a) since Dr. Dellosso and Dr. Riperpart were

not Plaintiff's treating physicians and/or health care providers. There was a never a physician-patient relationship between Dr. Dellosso and Plaintiff or even between Dr. Riperpart and Plaintiff. Dellosso was simply Plaintiff's employer while Dr. Ripepart was a friend and colleague doing Dellosso a favor.

70. As a result of the unlawful disclosures as aforesaid Plaintiff has been damaged and is entitled to equitable relief, injunctive relief, an award of punitive damages, compensatory damages, costs of suit and attorney's fees in an amount to be determined at trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION FOR
## VIOLATING THE PHYSICIAN-PATIENT PRIVILEGE

71. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth at length herein.

72. The physician-patient privilege in New York State is defined in CPLR § 4504. That statute provides, in pertinent part, "[u]nless the patient waives the privilege, a person authorized to practice medicine ... shall not be allowed to disclose any information which he acquired attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity."

73. Defendants violated the aforesaid section cited by engaging in the conduct as previously set forth herein.

74. As a result of the foregoing the Plaintiff has been damaged.

## AS AND FOR A EIGHTH CAUSE OF ACTION FOR
## NEGLIGENCE

75. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if fully set forth at length herein.

76. Defendant BETH ISRAEL MOUNT SINAI was at all relevant times, under a duty to Plaintiff to act with reasonable care.

77. Defendant BETH ISRAEL MOUNT SINAI breached said duty by failing to properly and sufficiently hire, supervise, educate, train, manage, monitor, control, sanction, or reprimand its agents and employees, such that they were unable to, would not, could not, or had no knowledge that they were required to adhere to the requirements of law, protect Plaintiff's privacy, refrain from bad faith conduct; and instead, permitted, allowed, condoned, ratified, and otherwise made as their own the conduct complained of herein.

78. Further, Defendant BETH ISRAEL MOUNT SINAI, among other things, failed to implement appropriate administrative, technical, and physical safeguards required by 45 CFR § 164.530 to ensure the privacy of health information and to prevent any use or disclosure that violates 42 USC § 201 et seq., and related state statutes and regulations.

79. That at all times herein Defendant BETH ISRAEL MOUNT SINAI negligently, carelessly, and recklessly, disclosed Plaintiff's private medical information and in turn violated the HIPAA's Privacy Rule that details the rights of patients and the obligations of health care providers and health insurance plans to safeguard the privacy of Protected Health Information ("PHI").

80. That at all times mentioned herein, Defendants failed to follow proper procedures, to safeguard Plaintiff's medical information.

81. As a result of the conduct as aforesaid Plaintiff has been damaged and is entitled to equitable relief, injunctive relief, an award of punitive damages, compensatory damages, costs of suit and attorney's fees in an amount to be determined at trial.

### AS AND FOR A NINTH CAUSE OF ACTION FOR
### <u>INVASION OF PRIVACY</u>

82. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

83. Plaintiff had an expectation of privacy regarding his medical information and/or medical condition.

84. HIPAA requires that covered entities use or disclose protected medical information only to provide treatment for payment purposes or in connection with certain "health care operations" unless the individual expressly consents to such other use or disclosure.

85. Defendants violated Plaintiff's right to privacy, as described above, when Dr. Riperpart, discussed Plaintiff's hospital records and related protected health information without Plaintiff's and with Plaintiff's employer to wit Dr. Dellosso.

86. Defendants publicized facts regarding Plaintiffs' medical condition that were not of legitimate public concern. The publicity was highly offensive to Plaintiff and would be highly offensive to any reasonable person.

87. As a result of the conduct as aforesaid Plaintiff has been damaged and is entitled to equitable relief, injunctive relief, an award of punitive damages, compensatory damages, costs of suit and attorney's fees in an amount to be determined at trial.

### AS AND FOR A TENTH CAUSE OF ACTION FOR
### <u>RETALIATORY DISCHARGE</u>

88. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

89. As previously alleged, upon information and belief VILLAGE DIAGNOSTIC retaliated against Plaintiff due to the complaint Plaintiff submitted to the OCR alleging HIPAA violations.

90. As a proximate result of Defendants' retaliation, Plaintiff has suffered and continues to suffer substantial loss of past and future earnings and other employment benefits.

91. As a further and proximate result of Defendants' actions, Plaintiff has suffered and continues to suffer, anxiety, stress, depression, severe and lasting embarrassment, humiliation, anguish and other incidental and consequential damages and expenses.

92. VILLAGE DIAGNOSTIC's conduct was done in conscious and malicious disregard of Plaintiff's rights.

93. Defendants' violation of Plaintiff's rights described above was knowing, willful, intentional and in deliberate and conscious disregard for the rights of Plaintiff, and demonstrated a wanton, reckless or callous indifference to the Plaintiff's statutory rights.

94. As a result of the conduct as aforesaid Plaintiff has been damaged and is entitled to equitable relief, injunctive relief, an award of punitive damages, compensatory damages, costs of suit and attorney's fees in an amount to be determined at trial.

### AS AND FOR AN ELEVENTH CAUSE OF ACTION FOR VIOLATION OF THE HEALTH INSURANCE PORTABILITY AND ACCOUNTABILITY ACT OF 1996 (HIPAA)

95. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth at length herein.

96. Upon information and belief, VILLAGE DIAGNOSTIC retaliated against Plaintiff because he exercised his rights under HIPAA.

97. VILLAGE DIAGNOSTIC violated Plaintiff's rights under HIPAA when they acquired and released privileged and confidential information.

98. As a result of the conduct as aforesaid Plaintiff has been damaged and is entitled to equitable relief, injunctive relief, an award of punitive damages, compensatory damages, costs of suit and attorney's fees in an amount to be determined at trial.

## AS FOR A TWELFTH CAUSE OF ACTION FOR
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

99. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth at length herein.

100. That solely as a result the foregoing, Plaintiff has experienced and continues to experience depressed mood, loss of confidence and self-esteem.

101. That solely as a result of the foregoing, Plaintiff was unable to work for a period of time, and now upon return to work is functioning in a hesitant, fearful, less focused, and less concentrated manner.

102. As a result of the conduct as aforesaid Plaintiff has been damaged and is entitled to equitable relief, injunctive relief, an award of punitive damages, compensatory damages, costs of suit and attorney's fees in an amount to be determined at trial.

## AS FOR A THIRTEENTH CAUSE OF ACTION
## VIOLATION OF PUBLIC POLICY

103. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

104. VILLAGE DIAGNOSTIC's behavior, as described above, constitutes retaliation because of Plaintiffs exercise of his legal rights.

105. VILLAGE DIAGNOSTIC's conduct, as described above, has the purpose and effect of deterring and chilling Plaintiff and others from asserting complaints or claims with regard to violation of statutes or societal rights.

106. As a result of the conduct as aforesaid Plaintiff has been damaged and is entitled to equitable relief, injunctive relief, an award of punitive damages, compensatory damages, costs of suit and attorney's fees in an amount to be determined at trial.

## AS FOR A FOURTEENTH CAUSE OF ACTION
## DEFAMATION

107. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

108. Plaintiff was a respected registered nurse in his field. VILLAGE DIAGNOSTIC's actions and the rationale offered as an excuse to terminate the Plaintiff injured the Plaintiff in his trade, business, and/or profession and thus is libelous per se.

109. As a result of the conduct as aforesaid Plaintiff has been damaged and is entitled to equitable relief, injunctive relief, an award of punitive damages, compensatory damages, costs of suit and attorney's fees in an amount to be determined at trial.

## PRAYER FOR RELEIF

**WHEREFORE**, Plaintiff demands judgment against the Defendants, on the First through Fourteenth Causes of Action to the fullest extent permitted by statute and in a sum to be determined a trial but believed to exceed the jurisdictional threshold of this Court.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he has a right to a jury trial.

Dated: November 30, 2015
      New York, NY

Respectfully submitted,

**LAW OFFICE OF JULIO E. PORTILLA, P.C.**
Attorneys for the Plaintiff
By: */s/ Julio E. Portilla*
Julio E. Portilla, Esq.
Law Office of Julio E. Portilla, P.C.
111 Broadway, Suite 706
New York, NY 10006
(212) 365-0292